UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
Plaintiff,

v.

CASE NO. 17-529 (ADC)

[2] CRISTINO SANCHEZ-SENDA,
Defendant.

RECEIVED AND FILED
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, PR
2018 JUN -4 AM 11:08

# PLEA AGREEMENT
(Pursuant to Federal Rules of Criminal Procedure 11(c)(1)(A) and (B))

TO THE HONORABLE COURT:



The United States of America through its counsel, Rosa Emilia Rodríguez-Vélez, United States Attorney for the District of Puerto Rico; José Capó Iriarte, Assistant United States Attorney, Chief, Criminal Division; Myriam Y. Fernández González, Assistant United States Attorney, Chief Financial Crimes and Corruption Unit; Dennise N. Longo Quiñones, Assistant United States Attorney; Jorge Luis Gerena, Esq., defendant's counsel; and Cristino Sanchez-Senda, the defendant, state to this Honorable Court, pursuant to Federal Rules of Criminal Procedure 11(c)(1)(A) and (B), that they have reached an agreement, the terms and conditions of which are as follows:

1. **COUNT TO WHICH DEFENDANT PLEADS GUILTY**

The defendant agrees to plead guilty to Count One of the Indictment which charges the defendant with a violation of Title 18, *United States Code*, Section 2237(a)(1) and (2), for failure to heave.

2. **MAXIMUM PENALTIES**

The penalties for a Title 18, *United States Code*, Sections 2237(a)(1) and 2, are a term of imprisonment of not more than five (5) years, a fine not to exceed $250,000.00, and a term of

supervised release of not more than three (3) years. The defendant understands that the imposition or execution of the sentence cannot be suspended and that parole has been abolished.

3. **APPLICABILITY OF SENTENCING GUIDELINES**

Defendant acknowledges that the Court may impose a sentence in accordance with the applicable provision(s) of the Sentencing Guidelines, Title 18 *United States Code*, Section 3551, *et seq.* (hereinafter Guidelines), which are now advisory.

4. **SPECIAL MONETARY ASSESSMENT**

Prior to defendant's change of plea hearing, the defendant shall pay a special monetary assessment of one hundred dollars ($100.00) per count of conviction.

5. **FINES AND RESTITUTION**

The defendant is aware that the Court may, pursuant to Section 5E1.2 of the *Sentencing Guidelines Manual*, order the defendant to pay a fine sufficient to reimburse the government for the costs of any imprisonment, probation or supervised release ordered and also the Court may impose restitution. As part of this Plea Agreement, the defendant agrees to produce complete information regarding all restitution victims and defendant agrees to execute a financial statement to the United States (OBD Form 500). The parties agree and acknowledge that restitution is mandatory pursuant to the *Mandatory Restitution Act*, Title 18 *United States Code*, Section 3663A(c).

6. **RULE 11(c)(1)(B) WARNINGS**

The defendant is aware that the defendant's sentence is within the sound discretion of the sentencing judge and the advisory Sentencing Guidelines (including the *Guidelines Policy Statements, Application, and Background Notes*). The defendant understands and acknowledges that the Court is not a party to this Plea Agreement and thus, is not bound by this agreement or the sentencing calculations and/or recommendations contained herein. Defendant specifically acknowledges and admits that the Court has jurisdiction and authority to impose any sentence

within the statutory maximum set for the offense to which the defendant pleads guilty. Defendant is aware that the court may accept or reject the Plea Agreement, or may defer its decision whether to accept or reject the Plea Agreement until it has considered the pre-sentence report. Should the Court impose a sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw the guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement.

7. **SENTENCING GUIDELINES CALCULATIONS**

Although the Guidelines are now advisory, *United States v. Booker*, 125 S.Ct. 738, 744, 160 L.Ed.2d 621 (2005) makes clear the sentencing court is required to consider the Guidelines "sentencing range established for ... the applicable category of offense committed by the applicable category of defendant" in imposing sentence. *Booker*, 125 S.Ct. at 744. Therefore, the United States and the defendant submit the following advisory Sentencing Guidelines calculations:



| 2016 UNITED STATES SENTENCING GUIDELINES CALCULATION TABLE Count 1 - 18 U.S.C. §§ 2237(a)(1) and (2) |||||||||
|---|---|---|---|---|---|---|---|---|
| **Base Offense Level** [§ 2A2.4(a)] | Base Offense Level |||||||  +10 |
| **Adjustment** [§ 2A2.4(B)(1)] | A dangerous weapon was possessed and its use was threatened |||||||  +3 |
| **Adjustment** [§ 3C1.2] | Reckless Endangerment During Flight |||||||  +2 |
| **Adjustment** [§ 3E1.1(a)] | Defendant timely accepted responsibility |||||||  -2 |
| **TOTAL ADJUSTED OFFENSE LEVEL** |||||||| 13 |
| **Sentencing Ranges** | TAOL 13 | CHC I 12-18 | CHC II 15-21 | CHC III 18-24 | CHC IV 24-30 | CHC V 30-37 | CHC VI 33-41 | |

8. **NO STIPULATION AS TO CRIMINAL HISTORY CATEGORY**

The parties make no stipulation as to defendant's Criminal History Category.

9. **SENTENCE RECOMMENDATION**

After due consideration of the relevant factors enumerated in Title 18, *United States Code*, Section 3553 the parties recommend a sentence of imprisonment of twelve (12) months and

one (1) day. The defendant agrees that a sentence within the terms of this Plea Agreement is reasonable pursuant to Title 18, United States Code, Section 3553(a).

### 10. NO FURTHER ADJUSTMENTS OR DEPARTURES

The United States and the defendant agree that no further adjustments or departures to the defendant's base offense level and no variant sentence under Title 18, *United States Code*, Section 3553 shall be sought by the parties. The parties agree that any request by the defendant for an adjustment, departure, or a sentence lower than the recommendation specified in this Agreement will be considered a material breach of this Plea Agreement and the United States will be able to request the withdrawal of the Plea Agreement.

### 11. SATISFACTION WITH COUNSEL

The defendant represents to the Court to be satisfied with defendant's counsel, Jorge Luis Gerena, Esq., and indicates that counsel has rendered effective legal assistance.

### 12. RIGHTS SURRENDERED BY DEFENDANT THROUGH GUILTY PLEA

Defendant understands that by entering into this agreement, defendant surrenders certain rights as provided in this agreement. Defendant understands that the rights of criminal defendants include the following:

  a. If the defendant had persisted in a plea of not guilty to the charges, defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States and the judge agree.

  b. If a jury trial is conducted, the jury would be composed of twelve lay persons selected at random. The defendant and the defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The

jury would be instructed that the defendant is presumed innocent, and that it could not convict the defendant unless, after hearing all the evidence, it was persuaded of the defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.

c. If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established the defendant's guilt beyond a reasonable doubt.

d. At a trial, the United States would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those witnesses and defendant's attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on defendant's own behalf. If the witnesses for the defendant would not appear voluntarily, defendant could require their attendance through the subpoena power of the Court.

e. At a trial, the defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilty could be drawn from the defendant's refusal to testify. If the defendant desired to do so, the defendant could testify on the defendant's own behalf.

13. **UNITED STATES RESERVATION OF RIGHTS**

The United States reserves the right to carry out its responsibilities under the sentencing guidelines. Specifically, the United States reserves the right: (a) to bring its version of the facts of this case including its file and any investigative files to the attention of the probation office in connection with that office's preparation of a presentence report; (b) to dispute sentencing factors

or facts material to sentencing; and (c) to seek resolution of such factors or facts in conference with opposing counsel and the probation office.

14. **DISMISSAL OF REMAINING COUNTS**

At sentencing, the United States shall request the dismissal of the remaining counts of the Indictment, if any, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A).

15. **STATEMENT OF FACTS**

The accompanying Statement of Facts signed by the defendant is hereby incorporated into this Plea Agreement. Defendant adopts the Statement of Facts and agrees that the facts therein are accurate in every respect and that the United States would have proven those facts beyond a reasonable doubt had the matter proceeded to trial. Further, the defendant agrees that said statement of facts may be used by the sentencing judge in determining the application of any sentencing guidelines and the imposition of a sentence in this case.

16. **IMPACT ON IMMIGRATION STATUS**

The defendant is hereby advised that if he is not a United States citizen a conviction of the offense for which the defendant has been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States to individuals who are not citizens of the United States.

17. **LIMITATIONS OF PLEA AGREEMENT**

It is specifically understood by the defendant, that this Plea Agreement binds only the United States Attorney's Office for the District of Puerto Rico and the defendant; does not extend to or bind other federal districts, federal civil and/or tax authorities, and/or State or Commonwealth of Puerto Rico tax authorities, civil and/or State or Commonwealth of Puerto Rico law enforcement authorities.

18. **ENTIRETY OF PLEA AGREEMENT**

This written agreement constitutes the complete Plea Agreement between the United States, the defendant, and the defendant's counsel. The United States has made no promises or representations except as set forth in writing in this Plea Agreement and deny the existence of any other term and conditions not stated herein.

19. **AMENDMENTS TO PLEA AGREEMENT**

No other promises, terms, conditions will be entered unless in writing, signed by all parties.

20. **VOLUNTARINESS OF GUILTY PLEA**

The defendant acknowledges that no threats have been made against the defendant and that the defendant is pleading guilty freely and voluntarily because the defendant is guilty.

21. **WAIVER OF APPEAL**

Defendant knowingly and voluntarily agrees that, if the imprisonment sentence imposed by the Court is twelve (12) months and one (1) day or less, the defendant waives the right to appeal any aspect of this case's judgment and sentence, including but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.

22. **VIOLATION OF BAIL PROVISIONS OR FAILURE TO APPEAR AT SENTENCING**

The Defendant agrees that any violation of the conditions of release set by the Court and any failure to appear at the any hearings set by the Court will be considered a material breach of this Plea Agreement and the United States will be free to ask for any sentence, either guideline or statutory, including an adjustment pursuant to Section 3C1.1 of the United States Sentencing Guidelines for Obstruction or Impeding the Administration of Justice.

23. **BREACH AND WAIVER**

The defendant understands and agrees that if the defendant breaches the Plea Agreement, the defendant may be prosecuted and sentenced for all of the offenses the defendant may have committed. The defendant agrees that if the defendant breaches this Plea Agreement, the Government reserves the right to take whatever steps are necessary to nullify the Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement and/or to set aside the conviction and sentence. The defendant also agrees that if he is in breach of this Plea Agreement, the defendant is deemed to have waived any objection to the reinstatement of any charges under the indictment, information, or complaint which may have previously been dismissed or which may have not been previously prosecuted.

**RESPECTFULLY SUBMITTED.**

**ROSA EMILIA RODRIGUEZ-VELEZ**
United States Attorney

_____
José Capó Iriarte
Assistant U.S. Attorney
Chief, Criminal Division
Dated: 5/29/18

_____
Myriam Y. Fernández González
Assistant U.S. Attorney
Chief, Financial Fraud and Corruption Unit
Dated: 5/29/2018

_____
Dennise N. Longo Quiñones
Assistant U.S. Attorney
Dated: 5/24/2018

_____
Jorge Luis Gerena, Esq.
Counsel for Defendant
Dated: June 4, 2018

CRISTINOSANCHEZ
_____
Cristino Sanchez-Senda
Defendant
Dated: June 4, 2018

I have consulted with my counsel and fully understand all of my rights with respect to the Indictment pending against me. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the *Sentencing Guidelines, Policy Statements, Application, and Background Notes* which may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with your attorney. I fully understand this agreement and I voluntarily agree to it.

Date: June 4, 2018

CRISTINA SANCHEZ
Cristino Sanchez-Senda
Defendant

I am the attorney for the defendant. I have fully explained to the defendant his rights with respect to the pending Indictment. Further, I have reviewed the provisions of the *Sentencing Guidelines, Policy Statements, Application, and Background Notes*, and I have fully explained to the defendant the provisions of those guidelines which may apply in this case. I have carefully reviewed every part this Plea Agreement with the defendant. I have translated the Plea Agreement and explained it in the Spanish language to the defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, the defendant is entering into this agreement voluntarily, intelligently and with full knowledge of all consequences of defendant's plea of guilty.

Date: June 4, 2018

Jorge Luis Gerena, Esq.
Counsel for Defendant

## STATEMENT OF FACTS

The defendant agrees to plead guilty to Count One of the Indictment, a violation of Title 18, *United States Code*, Sections 2237(a)(1) and 2. If this case had proceeded to trial, the United States would have proven beyond a reasonable doubt, and the defendant admits, that defendant is guilty as charged in Count One of the Indictment by presenting physical and documentary evidence, photographs, as well as the testimony of law enforcement agents and others to prove that:

On or about July 29, 2017, in the District of Puerto Rico and elsewhere, within the jurisdiction of this Court, the defendants, **[1] JOSE ANTONIO LINARES-CABRERA, aka DARIO LIMARES-CABRERA, aka DARIO LINARES-CABRERA, aka JOSE LINAREZ-CABRERA, and aka DARIO LINAREZ-CABRERA, and [2] CRISTINO SANCHEZ-SENDA, aka CRISTINO SANCHEZ, and aka LAUSTERO ZORRILLO,** acting as masters, operators or persons in charge of a vessel subject to the jurisdiction of the United States, did knowingly, and aiding and abetting each other, fail to obey an order by an authorized Federal law enforcement officer to heave to that vessel in violation of Title 18, *United States Code*, Sections 2237(a)(1) and 2.

The evidence would have shown beyond a reasonable doubt that the United States Coast Guard ("USCG") Sentinel-class cutter JOSEPH NAPIER (NAPIER) was charged on or about 10:50 P.M on July 28, 2017, to intercept a vessel that had been spotted in international waters approximately 38 Nautical Miles ("NM") west of Desecheo. On or about 11:50 P.M. a high-speed water-jet powered pursuit boat (the "pursuit boat") was launched from the NAPIER with five crewmembers on board to intercept the target of interest ("TOI") vessel. The USCG pursuit boat approached in lights out, covert status. On or about 12:10 A.M. on July 29, 2017, the USCG pursuit boat spotted the TOI and identified it as a "yola" type vessel with an overboard engine. The yola was spotted underway making wake, four individuals were spotted on board and fishing pots were identified on the bow of the yola. The lights of the yola were not in compliance with

navigational regulations. Upon approach, the USCG pursuit boat turned its blue lights and siren and used a spotlight to illuminate the yola. The USCG officers identified themselves as law enforcement in English and Spanish and ordered the yola to stop. USCG personnel noticed that two individuals were in the bow of the yola and two in the stern.

Upon noticing the USCG pursuit boat, [1] Jose Antonio Linares-Cabrera, who was driving the yola using the tiller on the overboard engine, and [2] Cristino Sanchez Senda were observed throwing at least 3 sets of 3'x2'x1' bales consistent with bales of cocaine overboard and making way to run away from the USCG pursuit boat. USCG personnel threw paper plates and glow sticks to the water to mark the area where [1] Jose Antonio Linares-Cabrera and [2] Cristino Sanchez Senda threw the bales into the water.



At that point, [1] Jose Antonio Linares-Cabrera gave the tiller of the yola's engine to [2] Cristino Sanchez Senda and started yelling at the USCG crewmembers of the pursuit boat and waving them off. [2] Cristino Sanchez Senda operated the yola from this point and through the following approximately 20 minute pursuit that ended when the yola's engine was disabled through USCG gunfire. After [1] Jose Antonio Linares-Cabrera gave the tiller to [2] Cristino Sanchez Senda and the yola started to run away, the USCG pursuit boat went back to the area where the bales were thrown to the water to try and locate the same with the assistance of the air support. No bales were recovered.

The USCG pursuit boat then reengaged pursuit of the yola. [1] Jose Antonio Linares-Cabrera continued to waive the USCG pursuit boat away. USCG officers gave verbal commands in Spanish and English for the yola to stop but the same were ineffective. USCG crewmembers then fired two warning shots towards the bow of the yola at on or about 12:15 a.m. At this time, [1] Jose Antonio Linares-Cabrera and [2] Cristino Sanchez Senda remained in the stern of the yola and continued to operate the yola in an attempt to avoid the boarding of the vessel by USCG personnel.

[1] Jose Antonio Linares-Cabrera was then observed switching the fuel barrel to the yola's engine and the yola sped up in its attempt to evade the boarding team. At on or about 12:24 a.m., the USCG pursuit boat crewmembers attempted to slow down the yola by executing maneuvers that would fill the yola with water. [1] Jose Antonio Linares-Cabrera was then observed bailing water out of the yola. USCG crewmembers also attempted to use a hook to pull off the fuel line of the yola's overboard engine in order to stop the vessel. USCG crewmembers successfully disengaged the fuel line of the overboard engine but [1] Jose Antonio Linares-Cabrera was then observed re engaging the fuel line and attempting to grab the hook from USCG Officer Builes. [1] Jose Antonio Linares-Cabrera had also picked up a knife and used it in various occasions to attempt to stab the USCG pursuit boat.

USCG once again ordered the yola crewmembers to stop the vessel and warn them that shots would be fired. At this time, [1] Jose Antonio Linares-Cabrera was observed using a club to wave off the USCG pursuit boat. Due to the yola's crewmembers lack of compliance, two more warning shots were fired at the aft of the yola. At this time, neither [1] Jose Antonio Linares-Cabrera nor [2] Cristino Sanchez Senda removed themselves to the bow of the yola. [2] Cristino Sanchez Senda kept driving the overboard engine and [1] Jose Antonio Linares-Cabrera kept threatening the USCG boarding party with a wooden club or baton.

[1] Jose Antonio Linares-Cabrera was also seen at this time splashing the USCG pursuit boat and its members with a liquid that was perceived to be a combination of salt water and fuel. USCG personnel then once again ordered the yola to stop and warned its crewmembers that they would now fire disabling shots. Since the yola and its crewmembers failed to heed the warning or order to stop, four disabling shots were fired at the overboard engine. The yola then came to a complete stop at approximately 12:36 a.m.

At this time, [1] Jose Antonio Linares-Cabrera remained non-compliant and [2] Cristino Sanchez Senda helped him in an unsuccessful attempt to repair the yola's engine.

[1] Jose Antonio Linares-Cabrera also continued to try to hit USCG crewmembers with the club and to splash them with gasoline. [1] Jose Antonio Linares-Cabrera also filled a Coleman cooler with fuel, placed in open water and attempted to float it towards the USCG pursuit boat. [1] Jose Antonio Linares-Cabrera also signaled the other crewmembers in the yola in an attempt to obtain a means to light the cooler afire. At this time, USCG Officer Hamel saw [1] Jose Antonio Linares-Cabrera wiping his hands with a rag and throwing it overboard. USCG Officer Hamel also saw [4] Junior De la Cruz Contreras wipe his hand with a rag and throw the rag overboard. Afterwards, [4] Junior De la Cruz Contreras raised his hands. USCG Officer Builes saw all four subjects wiping themselves before the USCG boarded their stranded vessel.

After the yola came to a complete stop, the USCG spotted the vessels markings and registration on the port and starboard bow area. The vessel was identified as the RAMI JHON and it was confirmed registered at the Dominican Republic. At this time, [1] Jose Antonio Linares-Cabrera also provided to USCG crewmembers a small vessel dispatch from the Dominican Republic Navy and he identified himself as a Dominican national. He then stopped to forcibly oppose or impede the boarding of the yola by USCG personnel. [4] Junior De la Cruz Contreras was then instructed to secure the knife inside a closed fish hold, [2] Cristino Sanchez Senda was ordered to stand at the bow with [3] Ricardo De la Cruz and [4] Junior De la Cruz Contreras and [1] Jose Antonio Linares-Cabrera was ordered to kneel down on the starboard side of the yola. USCG Officers Hamel and Wishnoff then boarded the yola and placed the subjects in handcuffs.

At on or about 1:45 a.m., electronic items including a Humminbird GPS system, and an electronic compass were found aboard the yola. The USCG crewmembers secured the yola and also recovered the overboard engine, the knife, the club, the engine cover, and found an unclaimed cell phone with two batteries. The Coleman cooler was retrieved from the water and processed as evidence. An Ion Scan of the yola detected PCP in the starboard forward rail of the vessel.

On August 18, 2017, the Dominican Republic Ministry of Justice relinquished jurisdiction in writing over the prosecution of the RAMI JHON and the four Dominican nationals arrested on July 27, 2017 since the boarding of the RAMI JHON took place approximately 15 NM from Dominican coastline (3 miles over the jurisdictional waters of the Dominican Republic).

The defendant herein adopts this statement of fact as his own testimony in support of his guilty plea and requests the Court to consider it as the basis for its finding of guilt as to the counts to which he has plead.

Full discovery has been provided to the defendant.

_____
Dennise N. Longo Quiñones
Assistant U.S. Attorney
Dated: 5/24/2018

_____
Jorge Luis Gerena, Esq.
Counsel for Defendant
Dated: 6/4/18

CRISTINO SANCHEZ
_____
Cristino Sanchez-Senda
Defendant
Date: 6/4/18